UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLES D. ALEXIS,

                Plaintiff,

    v.

TOWN OF CHEEKTOWAGA, et al.,

                Defendants.

**DECISION AND ORDER**
17-CV-985S

## I.    Introduction

This is a removed civil rights action, <u>see</u> 28 U.S.C. § 1443 (Docket No.1, Notice of Removal), arising from Plaintiff's arrest by Cheektowaga Police officers.  Plaintiff claims Defendants violated his constitutional rights.  He also alleges common law false arrest, false imprisonment, malicious prosecution, and negligent hiring, training, and supervision. (Docket No. 20, 2d Am. Compl.)

Before this Court is Defendants' Motion for Summary Judgment (Docket No. 29). For the reasons discussed below, the Motion is granted, dismissing the First Cause of Action.  After the stipulated dismissal of one state law cause of action, Plaintiff's remaining state law causes of action are remanded to New York State Supreme Court.

## II.    Background

### A.  Facts

For this summary judgment Motion, the facts from Defendants' Statement of Facts (Docket No. 29, Defs. Statement) are generally not disputed, <u>see</u> W.D.N.Y. Loc. Civ. R. 56(a)(2), save whether a surveillance video identified Plaintiff (<u>compare</u> Docket No. 31, Pl. Statement of Facts ¶ 3 <u>with</u> Docket No. 29, Defs. Statement ¶ 3).  This Court will recite

facts as alleged in the Second Amended Complaint (Docket No. 20) and stated in Defendants' Statement of Facts (Docket No. 29), noting when Plaintiff disputes a given fact.

### 1.  Slashing of the Motorcycle Tire

On Sunday, August 17, 2014, Megan Klein (an acquaintance of Plaintiff, Docket No. 20, 2d Am. Compl. ¶ 22) called Cheektowaga Police Department complaining that she had recorded Plaintiff slashing her friend's motorcycle tire (Docket No. 29, Defs. Statement ¶ 1).   Klein had installed a security camera in her apartment facing the apartment's parking lot (id. ¶ 2).  Defendants contend that the District Attorney determined that Plaintiff was depicted on Klein's security footage slashing the tire (id. ¶ 3, citing Docket No. 29, Defs. Atty. Aff. Ex. N (notes of District Attorney, Mar. 11, 2016)).  Plaintiff, however, disputes this, arguing that the video did not conclusively identify him or his vehicle (Docket No. 31, Pl. Statement ¶ 3; cf. Docket No. 29, Defs. Ex. R (Klein's surveillance video of incident)).

According to the police report recorded by Defendant Officer Emil DeVincentis, the officer was dispatched to Klein's apartment where he met Tyler Gajewski (the owner of the motorcycle) and saw the vandalized tire (Docket No. 29, Defs. Atty. Aff. Ex. G). Gajewski said he was visiting his former girlfriend (Klein) at her apartment and Gajewski claimed that Plaintiff was stalking Klein (id.).  Gajewski reported that Plaintiff earlier had vandalized Klein's car which was reported to the Cheektowaga Police Department; Klein then set up a surveillance camera to monitor the parking lot (id.; see also Docket No. 29, Defs. Atty. Aff. Ex. S, 911 audio recording).

Gajewski executed a deposition of fact to the Cheektowaga Police Department repeating that the video showed Plaintiff slashing his motorcycle tire (Docket No. 29, Defs. Atty. Aff. Exs. G, I (Deposition of Fact)).  He identified Plaintiff's vehicle as a 2006 gray Jeep and gave a license plate number (id., Ex. I).  Officer DeVincentis, however, identified that vehicle as being Klein's (id., Ex. G).  Gajewski estimated the replacement value of the damaged tire was $300 (Docket No. 29, Defs. Statement ¶ 5; Docket No. 29, Defs. Atty. Aff. Ex. I).

Officer DeVincentis then looked up Plaintiff's license plate number and discovered his address on Miller Street, in Depew, New York (Docket No. 29, Defs. Atty. Aff. Ex. G).

Officer DeVincentis reported that the surveillance video showed Plaintiff exit his car, slash the tire, return to his car, and leave (Docket No. 29, Defs. Atty. Aff. Ex. G).  This Court also viewed the 45-second surveillance video.  It showed a dark sedan approach a red motorcycle in a parking lot.  The car's driver exited that vehicle and approached the front motorcycle tire, touched the tire, returned to the car, and drove away.  The driver was in dark clothing and his face was not visible.  The video showed only the side of the car, but not its license plates.  (Docket No. 29, Defs. Atty. Aff. Ex. R.)

This Court also heard Klein's 911 call to the Cheektowaga Police Department (Docket No. 29, Defs. Atty. Aff. Ex. S).  There, Klein identified Plaintiff as the person who slashed Gajewski's tire, and that Plaintiff was the same person who earlier had vandalized her vehicle (id.).

2.  Plaintiff's Arrest

Officer DeVincentis and another officer (sued here as John Doe Defendant[1]) arrived at Plaintiff's Miller Street, Depew, residence (Docket No. 29, Defs. Statement ¶ 6; Docket No. 29, 2d Am. Compl. ¶ 14).  Plaintiff claimed that he was unaware why these officers were there (Docket No. 29, 2d Am. Compl. ¶ 16).  He alleges that DeVincentis' first words to Plaintiff was "I saw the video" (id. ¶ 17) but did not say what video he was referring to (id. ¶ 18).  The officers requested his permission to enter, and Plaintiff granted it (id. ¶ 19).  The officers then confronted Plaintiff and arrested him, escorting Plaintiff from his house (id. ¶¶ 20-21).  Plaintiff claims that he was never informed why the officers were there or why he was being arrested (id. ¶ 23).  Defendants contend that Plaintiff was charged with criminal mischief in the third degree (Docket No. 29, Defs. Statement ¶ 7; see Docket No. 29, Defs. Atty. Aff. Ex. G, at 2 (police report stating officers arrived at 10 Miller Street and immediately arrested Plaintiff)), a felony.

Plaintiff was arraigned on Monday, August 18, 2014, and released on his own recognizance (Docket No. 20, 2d Am. Compl. ¶ 8), after being held for 20 hours (Docket No. 20, 2d Am. Compl. ¶ 24; Docket No. 31, Pl. Statement Additional Material Facts ¶ 18).

After weeks of proceedings and adjournments of the criminal trial (Docket No. 29, Defs. Statement ¶¶ 10, 11; but cf. Docket No. 31, Pl. Statement ¶ 10), Plaintiff was offered and accepted an adjournment in contemplation of dismissal ("ACD") (id. ¶¶ 12, 13).

B.  Procedural History

Plaintiff filed this action in New York State Supreme Court against the Town of Cheektowaga (also referenced as "Town"), Officers DeVincentis and John Doe, and the

---

[1]The police report from Plaintiff's arrest identified a second officer present as Officer Heisler, Docket No. 29, Defs. Atty. Aff. Ex. G.

Cheektowaga Police Department (Docket No. 1, Notice of Removal, Ex. A, Compl.). Defendants removed this case to this Court (Docket No. 1) and then answered the original Complaint (Docket No. 3).

Plaintiff amended the Complaint twice (Docket Nos. 15, 20; <u>see</u> Docket Nos. 13 (Plaintiff's first Motion), 14 (text Order granting first Motion), 16 (Plaintiff's second Motion), 19 (text Order granting second Motion)).  The Second Amended Complaint now alleges five causes of action (Docket No. 20).  The First Cause of Action alleges Defendants unreasonably seized and deprived Plaintiff of his liberty without due process, in violation of the Fourth, Fifth, and Fourteenth Amendments (<u>id.</u> ¶¶ 30-36).  The Second Cause of Action alleges Defendants falsely arrested Plaintiff in violation of New York common law (<u>id.</u> ¶¶ 38-40).  The Third Cause of Action also alleges Defendants committed common law false imprisonment of Plaintiff (<u>id.</u> ¶¶ 42-49).  The Fourth Cause of Action asserts common law malicious prosecution by all Defendants (<u>id.</u> ¶¶ 51-55).  Finally, the Fifth Cause of Action alleges the Town of Cheektowaga and its Police Department negligently hired, trained, and supervised Officers DeVincentis and John Doe (<u>id.</u> ¶¶ 57-62). Defendants answered the Second Amended Complaint (Docket No. 21).

The Case Management Order set the discovery deadline of November 12, 2018, with dispositive motions due by May 15, 2019 (Docket No. 11).  On November 12, 2018, Plaintiff moved unsuccessfully to extend the time to complete discovery (Docket Nos. 25 (Motion), 26 (Order of Magistrate Judge Jeremiah McCarthy, Nov. 16, 2018)).

On May 21, 2019, Defendants moved for summary judgment (Docket No. 29)[2]. Responses to that Motion were due June 18, 2019, and reply by July 2, 2019 (Docket No. 30).  After completion of briefing, this Court reserved decision without oral argument.

### III.   Discussion

A.  Applicable Standards

1.  Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.

The movant seeking summary judgment has the burden (through pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials, Fed. R. Civ. P. 56(c)(1)) to demonstrate the absence of a genuine issue of material fact, Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion," Addicks v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is

---

[2]In support of their motion, Defendants submitted their attorney's Affidavit (with exhibits, including manually filed surveillance footage and the audio recording of Megan Klein's 911 call), Defendants' Statement of Material Facts, and Memorandum of Law, Docket No. 29.

In opposition, Plaintiff submit his attorney's Declaration (with exhibits), his Statement of Facts, and his Memorandum of Law, Docket No. 31.

Defendants replied with their Reply Memorandum, Docket No. 32.  Defendants did not respond to Plaintiff's asserted additional material facts.

summary judgment proper," <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of fact for trial," <u>Anderson</u>, <u>supra</u>, 477 U.S. at 249.  "Assessment of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment," <u>Rule v. Brine, Inc.</u>, 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment, <u>Anderson</u>, <u>supra</u>, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party, <u>Anderson</u>, <u>supra</u>, 477 U.S. at 252.

This Court's Local Civil Rules require the movant submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," W.D.N.Y. Loc. Civ. R. 56(a)(1), and the opponent to submit a response to each numbered paragraph in the movant's statement, <u>id.</u> R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, <u>id.</u>

2.   Unreasonable Seizure and Fourth Amendment False Arrest

a.   Constitutional Right Implicated

The sole basis for original federal subject matter jurisdiction that justified removal of this action (28 U.S.C. §§ 1441(c), 1443(2)) is Plaintiff's alleged civil rights violations under 42 U.S.C. § 1983.  That act provides

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

42 U.S.C. § 1983.  Plaintiff must prove that "(1) a person (2) acting under color of state law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States," City of Oklahoma City v. Tuttle, 471 U.S. 808, 829, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (Brennan, J., concurring), to state a § 1983 claim.

Plaintiff alleges violation of the Fourth Amendment to the United States Constitution (applicable to municipalities through the Fourteenth Amendment Due Process Clause, see Elkins v. United States, 364 U.S. 206, 213, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); Wolf v. Colorado, 338 U.S. 25, 27-28, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949)) (Docket No. 20, Am. Compl. ¶¶ 30-36).  That Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. Const. amend. IV.

To succeed on a false arrest/false imprisonment claim under the Fourth Amendment, Plaintiff must prove (1) the defendant intended to confine him, (2) Plaintiff was conscious of the confinement, (3) he did not consent to the confinement, and (4) the confinement was not otherwise privileged, e.g., DeSantis v. Town of Cheektowaga, No. 17CV148, 2020 WL 1530773, at *10 (W.D.N.Y. Mar. 31, 2020) (Skretny, J.) (citing cases).

"To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity," id. (quoting Simpson v. City of N.Y., 793 F.2d 259, 265 (2d Cir. 2015), citing other cases).  "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed," Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).

### b.  Probable Cause

Probable cause "is a complete defense to an action for false arrest brought under New York law or § 1983," Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); DeSantis, supra, 2020 WL 1530773, at *10.  Such an arrest is privileged, Donovan v. Briggs, 250 F. Supp.2d 242, 250 (W.D.N.Y. 2003) (Larimer, J.); Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003).

Once probable cause has been established, a "police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).

A finding of probable cause is made based on the totality of the circumstances, DeSantis, supra, 2020 WL 1530773, at *10; Illinois v. Gates, 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).   Probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules," Gates, supra, 462 U.S. at 232.   It is also not a "particularly stringent" standard; probable cause does not require proof of a suspect's guilt beyond a reasonable doubt.   "Instead, probable cause to arrest exists when the known facts are 'sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime,'" Donovan, supra, 250 F. Supp.2d at 253 (emphasis added) (quoting Jocks, supra, 316 F.3d at 135, quoting in turn Weyant, supra, 101 F.3d at 852).   Probable cause "is an assessment of probabilities, not an assessment of truths," Loria v. Gorman, 306 F.3d 1271, 1288-89 (2d Cir. 2002); Donovan, supra, 250 F. Supp.2d at 253.

Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest, Devenpeck, supra, 543 U.S. at 152; Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).

> "Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense,"

Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed.2d 1879 (1949).

When a victim or eyewitness reports a crime, probable cause generally will be found to exist based upon the eyewitness's testimony unless circumstances raise doubt as to the veracity of the eyewitness's statement, DeSantis, supra, 2020 WL 1530773, at *10; Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995), cert. denied, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996); see Panetta v. Crowley, 460 F.3d 338, 359 (2d Cir. 2006).  A law enforcement officer has probable cause "if he received his information from some person, normally the putative victim or eyewitness," Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (citation to quote omitted); Donovan, supra, 250 F. Supp.2d at 251 (see Docket No. 32, Defs. Reply Memo. at 5). The Gates Court stated, "if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary," Gates, supra, 462 U.S. at 233-34.  Typically, a witness' statement often is sufficient to establish probable cause, Donovan, supra, 250 F. Supp.2d at 251-52.

The "eventual disposition of the criminal charges is irrelevant to the probable cause determination," Hahn v. County of Otsego, 820 F. Supp. 54, 55 (N.D.N.Y. 1993), aff'd, 52 F.3d 310 (2d Cir. 1995) (citing Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)); see DeSantis, supra, 2020 WL 1530773, at *11.

c.   Duration of Detention

Plaintiff alleges in the First Cause of Action that his detention was "prolonged, intrusive, unjustified, and served no governmental purpose" (Docket No. 20, 2d Am. Compl. ¶ 33).

11

Prolonged post-arrest detention implicates the Fourth Amendment, <u>Mikulec v. Town of Cheektowaga</u>, 909 F. Supp.2d 214, 227 (W.D.N.Y. 2012) (Skretny, C.J.) (citing cases).  The Fourth Amendment requires a warrantless arrestee be brought promptly before a neutral magistrate before prolonging that detention, <u>Gerstein v. Pugh</u>, 420 U.S. 103, 113-14, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), <u>Albright v. Oliver</u>, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion); <u>Bryant v. City of N.Y.</u>, 404 F.3d 128, 136-37 (2d Cir. 2005).  A "prompt" judicial determination of probable cause does not mean an immediate determination, <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44, 53-54, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).  In articulating the boundaries of permissible detention under the Fourth Amendment, the Supreme Court in <u>McLaughlin</u> holds that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of <u>Gerstein</u>," <u>id.</u> at 56.

Nevertheless, a prompt probable cause determination may violate <u>Gerstein</u> if Plaintiff can prove that his or her probable cause determination was unreasonably delayed, <u>id.</u>  Examples of unreasonable delays include delay to gather additional evidence to justify the arrest; delay motivated by police officer ill will against the arrestee; or "delay for delay's sake," <u>id.</u>  In evaluating alleged delays, "courts must allow a substantial degree of flexibility," such as considering "unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available," obtaining the presence of the arresting officer or securing the premises of an arrest, or other practical realities, <u>id.</u> at 56-57; <u>see</u> <u>Mikulec</u>, <u>supra</u>, 909 F. Supp.2d at 227.  This Court held in <u>Mikulec</u> that a mere two-hour detention or detention

up to 48 hours was presumptively valid and did not violate the Fourth Amendment, Mikulec, supra, 909 F. Supp.2d at 227, see McLaughlin, supra, 500 U.S. at 56.

### d.  Municipal Liability under § 1983

Since Plaintiff sued the Town of Cheektowaga and its police department, this Court considers municipal liability distinct from its employees' liability.  The Town is liable only for its own actions or policies and not merely for employing alleged tortfeasors.  For a municipal employer to be liable under § 1983 solely for the actions of its employees (rather than its own misconduct), Plaintiff must allege the existence of a municipal policy or custom that resulted in the employee's tortious action.  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Tuttle, supra, 471 U.S. at 824.  Mere allegations of the existence of a municipal policy or custom are insufficient, Mikulec, supra, 909 F. Supp.2d at 228, citing Board of County Com'rs Bryan County, Okla. v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.1d 626 (1997).

### 3.  Supplemental Jurisdiction

Subject matter jurisdiction over the state law claims (such as the Second through Fifth Causes of Action here) may be raised by the parties or by this Court sua sponte, Lyndonville Sav. Bank & Trust v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000); LaChapelle v. Torres, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014).  This Court must examine its jurisdiction at any point in the proceeding, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (the district court has "to consider throughout the litigation whether to exercise its jurisdiction over the case"); see 14C Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman, and Mary Kay Kane, Federal Practice and Procedure § 3722, at 115 (Jurisd. rev. 4th ed. 2018).  This

Court has the discretion under its inherent authority to remand the case to state court when jurisdictionally sufficient claims have been eliminated and only supplemental jurisdiction claims remain, id., § 3739, at 765-66, 768; see Carnegie-Mellon, supra, 484 U.S. at 351.

Original federal jurisdiction (and grounds for removal from state court) here arises from Plaintiff's First Cause of Action under 42 U.S.C. § 1983.  The Second, Third, and Fourth Causes of Action under New York common law share the same nucleus of operative facts as the First Cause of Action.  Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over Plaintiff's state law claims, see Klein v. London Star Ltd., 26 F. Supp. 2d 689, 692 (S.D.N.Y. 1998), or may decline to hear these supplemental state law claims, 14C Federal Practice and Procedure, supra, § 3722, at 122.  Under § 1367(c), this Court would decline to exercise supplemental jurisdiction "in exceptional circumstances, there are other compelling reasons for declining jurisdiction," 28 U.S.C. § 1367(c)(2), (4); see Klein, supra, 26 F. Supp. 2d at 692, or if all original jurisdiction claims were dismissed, 28 U.S.C. § 1367(c)(3).

### 4.  False Arrest and False Imprisonment under New York Law

Plaintiff's Second and Third Causes of Action allege false arrest and false imprisonment under New York common law.  This Court acts as a state court would in addressing pendent state law claims, see Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996).

To prove false arrest, a plaintiff must show "that 1) the officer intended to confine the plaintiff; 2) the plaintiff was conscious of the confinement and did not consent to it; and 3) the confinement was not otherwise privileged," id., citing Broughton v. State,

37 N.Y.2d 451, 456, 373 N.Y.S.22d 87, cert. denied sub nom. Schanbarger v. Kellogg, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975).  False arrest is a species of common law false imprisonment, Singer, supra, 63 F.3d at 118.  False arrest and false imprisonment standards are the same for common law as under the Fourth Amendment, DeSantis, supra, 2020 WL 1530773, at *10.

Common law false imprisonment requires proof that (1) defendant intended to confine plaintiff, (2) plaintiff was conscious of the confinement, (3) plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged, Torres v. Jones, 26 N.Y.3d 742, 27 N.Y.S.3d 468 (2016); see Boans v. Town of Cheektowaga, 5 F. Supp.3d 364, 385 (W.D.N.Y. 2013) (Foschio, Mag. J.), adopted, 5 F. Supp.3d 364 (W.D.N.Y. 2014) (Arcara, J.) (see also Docket No. 31, Pl. Memo. at 5, noting that elements for false arrest and false imprisonment are the same).  The existence of probable cause "serves as legal justification for the arrest and an affirmative defense to the claim," Martinez v. City of Schenectady, 97 N.Y.2d 78, 85, 735 N.Y.S.2d 868, 872 (2001), and will defeat a claim for false imprisonment, Zanghi v. Incorp. Village of Brookville, 752 F.2d 43, 45 (2d Cir. 1985); Feinberg v. Sacks & Co., 83 A.D.2d 952, 953, 443 N.Y.S.2d 26, 27 (2d Dep't 1981); see Rizzo v. Edison Inc., 419 F. Supp.2d 338, 345 (W.D.N.Y. 2005) (Telesca, J.).

### 5.  Malicious Prosecution under New York Law

Plaintiff's Fourth Cause of Action alleges malicious prosecution under New York common law.  Common law malicious prosecution requires proof that (1) defendant commenced a criminal prosecution against a plaintiff, (2) that the proceeding terminated in the plaintiff's favor, (3) that there was no probable cause for the proceeding, and (4) it

was instituted with malice, Lowth, supra, 82 F.3d at 571; Colon v. City of N.Y., 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453 (1983).

### 6.  Qualified Immunity

Defendants also assert qualified immunity for Defendant Officer DeVincentis (Docket No. 29, Defs. Memo. at 5-10).  When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  As required by the Saucier Court, this Court first considered the constitutional question, then considered the qualified immunity question, id.  But the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), overruled Saucier in requiring courts to first determine whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity.  Instead, this Court can determine the order in which qualified immunity and constitutional violation is considered, see id. at 231-32.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 196 (1982).  "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified

immunity." <u>Anderson v. Creighton</u>, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523

(1987); <u>Lowth</u>, <u>supra</u>, 82 F.3d at 568-69.

As applied to false arrest claims,

"An arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met,"

<u>Golino v. City of New Haven</u>, 950 F.2d 864, 870 (2d Cir. 1991), <u>cert. denied</u> <u>sub nom.</u>

<u>Lillis v. Golino</u>, 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992).  "The defending

officer need only show 'arguable' probable cause," <u>Martinez</u>, <u>supra</u>, 202 F.3d at 634.

     B.  Parties' Contentions

Defendants argue that Plaintiff has not and cannot present competent evidence to

support his claims (Docket No. 29, Defs. Memo. at 4).  They next contend Plaintiff has

not alleged municipal liability by failing to claim any government custom or policy that led

to Plaintiff's claims (<u>id.</u> at 4-5).

Defendant DeVincentis claims qualified immunity (<u>id.</u> at 5-10), claims that he acted

reasonably in arresting Plaintiff (<u>id.</u> at 11-13).

Defendants conclude that Plaintiff's Fifth Amendment claims also fail because that

Amendment only applies to the federal government and not to the states or their

municipalities such as the Defendant Town and its officers (<u>id.</u> at 13).

Plaintiff's chief argument is the existence of factual issues preclude summary

judgment for Defendants (Docket No. 31, Pl. Memo. at 6-7).  The issues surround the

finding of probable cause.  Plaintiff challenges his identification arguing that it was based

upon the video recording of the tire slashing which did not conclusively show Plaintiff's

face or his vehicle (id. at 6).  He also contests the authority of the Cheektowaga Police officer to arrest him without a warrant in Depew (id. at 6-7).  Plaintiff also denied that Officer DeVincentis was entitled to qualified immunity because of the issues of fact stated above regarding the existence of probable cause for the arrest (id. at 7).  Plaintiff claims he raised distinct federal and state law claims (id. at 5-6).

Defendants reply that Plaintiff's purported state claims merely alleged federal claims (Docket No. 32, Defs. Reply Memo. at 1).  Had Plaintiff alleged state law claims, Defendants point out (among other state law defenses, see id. at 1-2) that Plaintiff's ACD was not a favorable termination for his malicious prosecution claim (id. at 3-4), Murphy v. Lynn, 118 F.3d 938, 949 (2d Cir. 1997).  They reaffirm that DeVincentis is entitled to qualified immunity (id. at 4-5).  As for Plaintiff's claim that his identification was a potential fact question, Defendants retort that Plaintiff did not deny that he was depicted on the video or that he did not slash the tire and Plaintiff accepted the ACD to the criminal mischief charge (id. at 5).  Finally, any contention that Plaintiff was detained for an unreasonable length of time is contrary to case law (id. at 6, quoting Mikulec, supra, 909 F. Supp.2d at 227).

C.  Preliminary Matters

There are some preliminary points the parties agree upon that eliminate some parties and claims in this action.  Defendants contend that the Cheektowaga Police Department is not a suable entity (Docket No. 29, Defs. Memo. at 4), Abram v. Town of Cheektowaga Police Department, No. 18CV1267, 2020 WL 3513677, at *4 (W.D.N.Y. June 29, 2020) (Skretny, J.) (under New York law, police departments are mere agencies of municipalities without a separate legal identity); see Mikulec, supra, 909 F. Supp.2d at

227 n.9.  They also argue that Plaintiff cannot allege negligent hiring, training, and supervision because he separately alleges the Town's vicarious liability for its employees (id. at 13-14).

Plaintiff concedes that the Cheektowaga Police Department cannot be sued under New York law and agrees to dismissal of his Fifth Cause of Action since those claims are alleged elsewhere in his Second Amended Complaint (Docket No. 31, Pl. Memo. at 5, 8). Defendants' Motion for Summary Judgment (Docket No. 29) dismissing claims against the Police Department and dismissing the Fifth Cause of Action is granted.

Defendants are also correct (Docket No. 29, Defs. Memo. at 13) that Plaintiff has no claims against them for violating his Fifth Amendment rights (a point Plaintiff does not challenge).   The Fifth Amendment Due Process Clause applies only to the federal government and not to the states or its municipalities, e.g., Solomon v. City of Rochester, 449 F. Supp.3d 104, 113 (W.D.N.Y. 2020) (Wolford, J.); see Dusenbery v. United States, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").   Rather, Plaintiff's claims arise under the Fourth and Fourteenth Amendments.  Thus, so much of Plaintiff's First Cause of Action arising from the Fifth Amendment also is dismissed.

### D.  Unreasonable Seizure, First Cause of Action

This Court next addresses the only original jurisdiction cause of action alleged (and the grounds for removal), Plaintiff's § 1983 civil rights claim from the arrest.  Plaintiff raises several challenges to the legality of his arrest, concluding now that these present issues

of material fact that should preclude summary judgment for the Town and its officers. First, Plaintiff argues that there was no probable cause to arrest him for slashing Gajewski's tire.   Second, he challenges the duration of his detention.   Third, Plaintiff objects to the warrantless arrest by Cheektowaga Police officers in Depew, arguing that they acted outside of their geographic jurisdiction.  Finally, Plaintiff alleges claims against the Town itself, raising the issue of municipal liability.

This Court also notes that Plaintiff has not opposed summary judgment because he required discovery to respond to this motion, cf. Fed. R. Civ. P. 56(d).  This is despite counsel's arguments (Docket No. 31, Pl. Atty. Decl. ¶¶ 17-32) about his denied Motion to Extend Time to Complete Discovery (Docket No. 25; see Docket No. 26, Order of Nov. 16, 2018, denying motion (McCarthy, Mag. J.)) and his subsequent inability to conduct stipulated depositions after the discovery deadline expired prior to the filing of the Motion for Summary Judgment.  He does not now argue that he is unable to respond to Defendants' Motion because of his inability to complete discovery.  Therefore, this Court proceeds with the substance of Defendants' Motion, starting with whether probable cause existed for Plaintiff's arrest by Defendant DeVincentis.

1.   Probable Cause for Arrest

Applying the elements for a civil rights action under § 1983, the Town of Cheektowaga is a person under § 1983, Monell, supra, 436 U.S. at 663, as are Officers DeVincentis and John Doe.  It is also clear that the officers acted under color of state law as police officers of the Town.  What remains is whether Defendants deprived Plaintiff of a right secured by the United States Constitution, here his Fourth Amendment right

against unreasonable seizure (applicable to the Town under the Due Process Clause of the Fourteenth Amendment).

Most of the material facts are not in dispute. Plaintiff agreed with Defendants' Rule 56 Statement save one key point, whether the surveillance video recorded by Klein accurately depicted Plaintiff to provide probable cause for his arrest (Docket No. 31, Pl. Statement ¶ 3). He contends this is crucial to denying summary judgment either because Officer DeVincentis lacked probable cause to arrest him or there is a material question of fact about probable cause. Plaintiff does not dispute that the motorcycle was damaged; his contention is about identification.

### a. Probable Cause Determination

Officer DeVincentis arrested Plaintiff for criminal mischief in the third-degree, a class E felony, N.Y. Penal L. § 145.05(2). Criminal mischief in the third degree occurs when a person, with intent to damage property of another, and having no right to do so nor any reasonable ground to believe that he had the right to do so, damages property of another in an amount over $250, N.Y. Penal L. § 145.05(2).

In this Court's view, the facts pertinent to the probable cause determination compel the conclusion that Officer DeVincentis had sufficient probable cause to arrest Plaintiff under § 145.05, see DeSantis, supra, 2020 WL 1530773, at *11 (existence of probable cause is question of law when facts are not disputed, citing cases).

Gajewski and Klein reported to Officer DeVincentis the vandalism of Galewski's motorcycle and Klein identified Plaintiff as the suspected vandal. Klein was an acquaintance of Plaintiff. She had prior interactions with Plaintiff, such as his alleged previous vandalizing of her car (that also was under police investigation, see Docket

No. 29, Defs. Atty. Aff. Ex. G) that presumably led to her setting up video surveillance of her car.  Presumably, Klein could recognize him (or his car) from a distance even without seeing his face in a video recording.

Gajewski, Klein's former boyfriend, claimed Plaintiff was stalking Klein (id.).  Officer DeVincentis had a signed complaint and a sworn Deposition of Fact from Gajewski against Plaintiff (id., Exs. H, I), sworn to and made with the declaration that false statements would be punishable as a class A misdemeanor, N.Y. Pen. L. § 210.45 (id. Ex. I).  There, Gajewski recounted the video showing Plaintiff leave his vehicle and slash Gajewski's motorcycle tire, the cost of the damage, Plaintiff's alleged stalking, and Gajewski's relationship with Klein (id.).  The damage estimate of $300 made the damage a felony offense, see N.Y. Penal L. § 145.05(2).

Probable cause to arrest Plaintiff required a reasonable officer to conclude that an offense had been committed and that Plaintiff committed the offense.  The officer need not have absolute certainty that the identification was correct absent circumstances that cast doubt on the witness's veracity, Singer, supra, 163 F.3d at 119.  A victim's statement typically is sufficient to establish probable cause, Martinez, supra, 202 F.3d at 634.

Officer DeVincentis here relied upon the victim's and witness's identification of the perpetrator, leading here to Plaintiff's arrest.  Gajewski swore statements that, if fabricated, would subject him to criminal liability, cf. Gates, supra, 462 U.S. at 233-34.  Plaintiff has not shown that Klein's or Gajewski's veracity should have been questioned by DeVincentis or that circumstances warranted his further inquiry.  DeVincentis had no basis to probe into Klein or Gajewski's relationships with Plaintiff.  They told DeVincentis that Klein was acquainted with Plaintiff and that he allegedly harassed her in the past.

On these facts known by the officer as of Plaintiff's arrest, Officer DeVincentis had sufficient evidence that identified Plaintiff as the suspect, hence probable cause to arrest him.

Donovan v. Briggs provides an instructive example of evaluating the determination of probable cause based upon eyewitness statements, Donovan, supra, 250 F. Supp.2d 242.  There, defendant Deputy Steven Peglow investigated a rape allegation lodged against Plaintiff Samuel Donovan when Donovan's daughter accused him of raping her. After interviewing the daughter, Peglow interviewed Donovan who showed him the daughter's handwritten "to-do" list which included an entry calling for framing Donovan for an assault.  Id. at 249, 245-46.  Peglow weighed the daughter's credibility based upon that list and continued investigating (reviewing the daughter's medical records after the alleged assault, interviewing both a child protective services worker and an Assistant District Attorney—and codefendant—Cara Briggs) to determine whether this crime had occurred and whether Donovan perpetrated it, id. at 247-48, 253.  Peglow arrested Donovan, id. at 248, and his role ended at the arrest.  During the subsequent prosecution the daughter recanted her accusations against Donovan, id. at 260.

Donovan sued Peglow (and Briggs) for false arrest (among other claims), id. at 244.  On defendants' Motion for Summary Judgment, Judge Larimer held that Peglow had probable cause to arrest Plaintiff from the daughter's statement, id. at 251-53.  Judge Larimer then noted the circumstances there that may have called the victim's credibility into question, such as her "to-do" list, and "[v]iewed in the context of all other facts and 'reasonably trustworthy information' that were known by defendants at the time," concluded that the potentially discrediting factors "were not enough to dispel probable

cause in this case," id. at 252 (quoting United States v. Jenkins, 876 F.2d 1085, 1089 (2d Cir. 1989)).

Judge Larimer then rejected Donovan's argument that Peglow should have investigated further, holding that "[o]nce probable cause exists, however, a 'police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest,'" Donovan, supra, 250 F. Supp.2d at 253 (quoting Ricciuti, supra, 124 F.3d at 128).  Applying the less stringent standard for determining probable cause, Judge Larimer concluded that the objective facts known at the time prior to the arrest were sufficient to give rise to probable cause, id.

In the present case, the information known to Officer DeVincentis is akin to the facts presented to Deputy Peglow in Donovan.  Officer DeVincentis relied upon the victim's and witness's statements identifying the perpetrator and alleging that a crime had occurred, leading to Plaintiff's arrest.  Based on the facts known by Officer DeVincentis as of the arrest, he had reasonably trustworthy information to justify Plaintiff's arrest. Unlike in Donovan, there was no evidence that potentially discredited Klein or Gajewski. From the facts known to Officer DeVincentis as of the arrest, he had probable cause to arrest Plaintiff.

                                    **b.  Questioning Sufficiency of Evidence for Probable Cause**

Plaintiff challenges the credence given by DeVincentis to Klein and Gajewski based upon the video of the alleged incident.  He argues there are issues of fact as to the identification from Klein's video of the apartment parking lot.  That surveillance video does not show the driver's face.

But Officer DeVincentis' identification of Plaintiff is not solely based upon the video. He relied upon Klein's identification of the driver and Plaintiff acknowledges his acquaintance with Klein, see Donovan, supra, 250 F. Supp.2d at 253; Ricciuti, supra, 124 F.3d at 128 (Docket No. 20, 2d Am. Compl. ¶ 22).   Officer DeVincentis could rely upon the witnesses' identification as the basis for action.   For probable cause purposes, all that was needed was a trustworthy witness complaint absent circumstances to question that trustworthiness.  Plaintiff has not shown such circumstances.

Another potential credibility issue is the license plates of the dark sedan in the video (cf. Docket No. 29, Defs. Atty. Aff. Ex. R).   No one is contending that the officer learned the plate number from viewing the video.   In the police report (Docket No. 29, Defs. Atty. Aff. Ex. G), DeVincentis stated that he "looked up offender's license plate" to locate Plaintiff at the Miller Street address (id. at 1) where "the listed vehicle was in the driveway" (id. at 2).  The absence of visible license plates in the video does not render the identification and location of Plaintiff less credible.

Therefore, reviewing the totality of the evidence presented to Officer DeVincentis after interviewing Gajewski and Klein, there was probable cause for Plaintiff's arrest. Since probable cause renders the arrest privileged, Donovan, supra, 250 F. Supp.2d at 250; Jocks, supra, 316 F.3d at 135, Plaintiff fails to state a claim for false arrest under the Fourth Amendment.

### 2.  Duration of Detention

Next, Plaintiff argues that he was detained for 20 hours from Sunday, August 17, 2014, until Monday, August 18, 2014, when he appeared at his arraignment (Docket No. 20, 2d Am. Compl. ¶ 24; Docket No. 31, Pl. Statement Additional Material Fact ¶ 18;

Docket No. 29, Def. Statement ¶ 8), concluding that the detention was prolonged, unjustified, and served no governmental purpose (Docket No. 20, 2d Am. Compl. ¶ 33). He cited this Court's decision in Mikulec, supra, 909 F. Supp.2d 214, for the proposition that detention longer than necessary (regardless of its duration) is constitutionally unreasonable (Docket No. 31, Pl. Memo. at 8). He seems to argue that detention for allegedly slashing a tire should not have lasted up to 20 hours (cf. id. at 7-8). The length of post-arrest detention, however, is not tied to the offense charged. Plaintiff was detained until a court was available to hear his appearance and the duration of the resulting detention was not set by the arresting officers based upon the offense charged.

Plaintiff here has not asserted any of the unreasonable delays cited by the McLaughlin Court, 500 U.S. at 56-57, or by this Court in Mikulec, supra, 909 F. Supp.2d at 227. There is no evidence of the Cheektowaga Police Department detaining Plaintiff to obtain additional evidence against him to justify the arrest or any ill will on DeVincentis' part. There is no evidence of delay for delay's sake. He also fails to produce evidence "tending to show that officers detained him for longer than necessary," Mikulec, supra, 909 F. Supp.2d at 227, hence the presumption of validity of the detention applied, id. (dismissing prolonged detention claim).

Plaintiff states he was detained for 20 hours, from Sunday afternoon through Monday morning (e.g., Docket No. 31, Pl. Statement Additional Material Fact ¶ 18; see Docket No. 29, Defs. Atty. Aff. Ex. U; Docket No. 29, Defs. Statement ¶ 8). Any delay in his detention was due to when it occurred. According to his arrest and booking form (Docket No. 29, Defs. Atty. Aff. Ex. T), the incident occurred at 10 am on August 17 and Plaintiff was booked on 2:08 that afternoon (id.). Since this detention began on a Sunday,

26

the earliest court appearance would be the next morning.  This is the flexibility called for by <u>McLaughlin</u>, that this Court recognize that delays can occur, as here, when a magistrate is not readily available or other practical realities precluded a sooner inquiry, <u>see</u> <u>McLaughlin</u>, <u>supra</u>, 500 U.S. at 57.

Thus, this delay is less than 48 hours before release or judicial determination of probable cause.   There was no unreasonable delay and hence the duration was presumptively reasonable, <u>Mikulec</u>, <u>supra</u>, 909 F. Supp.2d at 227.  Therefore, Plaintiff's objection on this ground is rejected.

### 3.  Authority to Arrest Beyond Geographical Jurisdiction

Plaintiff also complains that the Cheektowaga Police officers exceeded their jurisdiction by arresting him without a warrant in Depew (Docket No. 31, Pl. Memo. at 6) but without citing authority for this proposition.  Defendants did not address this argument.

New York Criminal Procedure Law § 140.10(3) authorizes a police officer to arrest without a warrant for a crime regardless whether it was committed within the geographical area of the officer's employment and can make such arrest anywhere within New York State, N.Y. Crim. Proc. L. § 140.10(3); <u>see</u> <u>Alifieris v. American Airlines</u>, 63 N.Y.2d 370, 482 N.Y.S.2d 453 (1984); <u>People v. Twoguns</u>, 108 A.D.3d 1091, 1092, 969 N.Y.S.2d 337 (4th Dep't 2013) (upholding denial of motion to dismiss indictment for felony driving while intoxicated and resisting arrest for arrest made in neighboring town); <u>People v. Garcia</u>, 26 Misc.3d 1233, 907 N.Y.S.2d 439 (Table), 2010 WL 817498, at *6 (Sup. Ct. Bronx County 2010) (probable cause for felony authorized arrest "irrespective of [officer's] assigned command").

This differs from a warrantless arrest for a <u>petty</u> offense, defined in the Criminal Procedure Law as a violation or traffic infraction, N.Y. Crim. Proc. L. § 1.20(39), which must occur within the police department's jurisdiction and may be arrested in that jurisdiction and up to 100 yards of from that area, N.Y. Crim. Proc. L § 140.10(2); <u>Twoguns</u>, <u>supra</u>, 108 A.D.3d at 1092, 969 N.Y.S.2d 337 (granting defendant's motion to dismiss traffic infractions where arrest was beyond 100 yards of the limits of Village of Gowanda).

Plaintiff here was charged with criminal mischief in the third degree, N.Y. Penal L. § 145.05(2), for damaging property in an amount over $250 (Docket No. 29, Defs. Statement ¶ 7; Docket No. 29, Defs. Atty. Aff. Ex. H), a class E felony.  A suspect so charged may be arrested without a warrant by a police officer anywhere in the state, including in the nearby municipality.  Plaintiff's objection to the geographic range of the arrest is rejected.

Therefore, Defendants' Motion for Summary Judgment (Docket No. 29) dismissing the First Cause of Action is granted.

### 4. Municipal Liability

Finally, this Court notes that Plaintiff fails to allege how the Town of Cheektowaga was liable for Plaintiff's arrest by Defendant Officer DeVincentis aside from mere supervisory liability.  A municipality cannot be held liable on the theory of respondeat superior or simply for hiring an alleged tortfeasor, <u>Mikulec</u>, <u>supra</u>, 909 F. Supp.2d at 228; <u>see</u> <u>Monell</u>, <u>supra</u>, 436 U.S. 658.  Plaintiff does not allege any Town policy or custom condoning allegedly illegal arrests to assert municipal liability, <u>Mikulec</u>, <u>supra</u>, 909 F. Supp.2d at 228.  Thus, he has not alleged municipal liability under § 1983.

Defendants' Motion for Summary Judgment (Docket No. 29) to dismiss the First Cause of Action as against the Town is granted.

This Court now considers whether to exercise jurisdiction over Plaintiff's remaining state common law claims, the Second, Third, and Fourth Causes of Action.

E.  Supplemental Jurisdiction over State Law Claims

With the dismissal of Plaintiff's sole federal claim alleged in the First Cause of Action, this Court must determine if it would exercise its discretion and consider the related state law claims.

The parties argue whether the Second, Third, or Fourth Causes of Action assert state or federal claims (compare Docket No. 29, Defs. Memo. at 4-5 with Docket No. 31, Pl. Memo. at 5).  This Court agrees with Plaintiff and will consider the Second through Fourth Causes of Action as state law claims.  These claims do not refer to violation of federal rights and track the elements under New York common law for false arrest, false imprisonment, and malicious prosecution.  These causes of action allege claims distinct from his First Cause of Action under the Fourth Amendment.

Since this case was removed to federal court and the only original jurisdiction cause of action was dismissed, this case is remanded to New York State Supreme Court for further proceedings, see 28 U.S.C. §§ 1367(c)(3), 1447(c); see also Blair v. New York City Transit Auth., No. 14-CV-5091, 2016 WL 6405900, at *5 (E.D.N.Y. Oct. 27, 2016).  Therefore, this Court declines to exercise supplemental jurisdiction.

F.  Qualified Immunity for Officer DeVincentis

Defendants also argue that Officer DeVincentis should enjoy qualified immunity because Plaintiff cannot establish violation of a clearly established constitutional right (see Docket No. 29, Defs. Memo. at 5-10).

Given the determination that Plaintiff's arrest was based on probable cause, this Court need not reach this qualified immunity issue, see Saucier, supra, 533 U.S. at 201 ("if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity"); Donovan, supra, 250 F. Supp.2d at 253-54.

Nonetheless, this Court holds that Officer DeVincentis also is entitled to qualified immunity.  An officer is entitled to qualified immunity "if he 'reasonably but mistakenly conclude[s] that probable cause is present,'" id. at 254 (quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1995)); DeSantis, supra, 2020 WL 1530773, at *11.

If probable cause is lacking, see Donovan, supra, 250 F. Supp.2d at 254, Defendant DeVincentis still would be entitled to qualified immunity.  His actions remain objectively reasonable.  Defendants' Motion for Summary Judgment (Docket No. 29) on this ground is granted.

## IV.   Conclusion

Defendants' Motion for Summary Judgment (Docket No. 29) is granted.  First, Plaintiff stipulates to dismissal of claims against the Cheektowaga Police Department and dismissal of his Fifth Cause of Action.

30

Next, the First Cause of Action (the only one alleging a federal claim) is dismissed because there was probable cause based on the eyewitness and complainant statements.  In addition, Plaintiff has not shown that his 20-hour detention prior to his arraignment violated his Fourth Amendment rights.  He also fails to allege municipal liability against the Town of Cheektowaga.  Alternatively, Defendant DeVincentis is entitled to qualified immunity.

This Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, the Second, Third and Fourth Causes of Action.  These claims are remanded to New York State Supreme Court for further proceedings.

## V.      Orders

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 29) is GRANTED as to dismissal of the First Cause of Action.

FURTHER, the Clerk of Court is DIRECTED to remand the remaining State Causes of Action (the Second, Third, and Fourth Causes of Action) to New York State Supreme Court, Erie County, and to close this federal case.

SO ORDERED.

Dated:      November 10, 2021
             Buffalo, New York


                                                          s/William M. Skretny
                                                         WILLIAM M. SKRETNY
                                                      United States District Judge